J-S40016-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: L.C.L., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: C.J.L., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 3556 EDA 2016 |

Appeal from the Decree October 14, 2016
In the Court of Common Pleas of Philadelphia County
Family Court at No(s):  CP-51-AP-0000424-2016

BEFORE:   OTT, J., DUBOW, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY OTT, J.:                          **FILED JUNE 30, 2017**

C.J.L., ("Father") challenges the final decree involuntarily terminating his parental rights to his son, L.C.L. ("Child") pursuant to the Adoption Act, 23 Pa.C.S. § 2511(a) and (b).  We affirm.

**SUMMARY OF FACTS AND PROCEDURAL HISTORY**

Father and A.B. ("Mother") are the natural parents of Child.  Mother had been involved with the Department of Human Services ("the Agency") since 2012, when Child Protective Services reported that Child's half-sisters, E.H. and C.H., had been abused while in the custody of Mother and Father. The girls' biological father was incarcerated at the time.  Both sisters were placed in foster care.

_____

[*] Former Justice specially assigned to the Superior Court.

On July 22, 2013, Mother pled guilty to charges arising from the abuse of her daughters and she served eighteen months in prison. Child was born in January 2015, but Mother neglected to inform the Agency of Child's birth. Rather, the Agency only became aware of Child's existence as a result of a routine visit involving E.H. and C.H. The Agency obtained an order of protective custody on April 17, 2015, and, the trial court ordered temporary commitment of Child to the Agency. The court granted Mother and Father supervised weekly visits.

On May 7, 2015, the court adjudicated Child dependent, and made a finding of aggravated circumstances against Mother based on her criminal convictions. On September 11, 2015, Mother voluntarily relinquished her parental rights to E.H. and C.H.[1]

On May 12, 2016, the Agency filed a petition to terminate both Father's and Mother's parental rights ("TPR petition) pursuant to 23 Pa.C.S. § 2511(a)(1),(2),(5), (8), and (b). At the same time, in the dependency action, the Agency requested a change in the permanency goal from reunification to adoption.

The trial court held its first hearing on June 24, 2016. Because Mother's counsel was unavailable, the court heard testimony only with

---

[1] We affirmed the termination of the girls' biological father's rights in an unpublished memorandum filed on August 2, 2016. *See In the Interest of E.C.H.*, No. 476 EDA 2016.

regard to Father. The Agency presented the testimony of Dr. Erica Williams, who performed a parenting capacity evaluation of Father, and the testimony of the Agency's caseworker. In addition, the trial court heard testimony from a caseworker who observed visits between Father and Child in the kinship care foster home. Father testified on his own behalf. At the conclusion of the hearing, the court deferred ruling on the TPR petition until hearing the testimony regarding Mother.

Newly-appointed counsel appeared on Mother's behalf at an evidentiary hearing held on October 14, 2016. The Agency once again presented testimony from Dr. Williams and its caseworker. Mother testified on her own behalf and presented the testimony of W.R, the kinship foster parent. After hearing argument from counsel, the court entered its decree terminating both Father and Mother's parental rights pursuant to 23 Pa.C.S. §§ 2511(a)(2), (5), (8), and (b).[2] The trial court also entered an order changing the permanency goal from reunification to adoption. Father filed this timely appeal.[3]

**ISSUES ON APPEAL**

_____

[2] Although the decree also lists subsection (a)(1), it is clear from our review of the record that the trial court did not terminate Father's parental rights on this basis.

[3] We affirmed the termination of Mother's parental rights in an unpublished memorandum filed on May 19, 2017. *See In the Interest of L.C.L.*, No. 3516 EDA 2016.

Father raises the following issues on appeal:

1. Did the Trial Court err in terminating [Father's] parental rights under 23 Pa.C.S.A. Section 2511(a)(2), 2511(a)(5), and 2511(a)(8)?

2. Did the Trial Court err in finding that termination of [Father's] parental rights best served [Child's] developmental, physical and emotional needs under 23 Pa.C.S.A. Section 2511(b)?

3. Did the Trial Court err in changing [Child's] goal to adoption?

Father's Brief at vi. Because evidence regarding the permanency plan goal change and TPR petitions substantially overlap, and the legal standards to be applied are the same, we will first address Father's termination issue. *See In the Interest of R.J.T.*, 9 A.3d 1179, 1191 n.14 (noting that courts should combine hearings on these two petitions since the evidence substantially overlaps and allows for faster permanency for the child).

**LEGAL ANALYSIS**

The standard of review in termination of parental rights cases requires appellate courts "to accept the findings of fact and credibility determinations of the trial court if they are supported by the record." *In re Adoption of S.P.*, 47 A.3d 817, 826 (Pa. 2012). "If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion." *Id.* We may reverse a decision based on an abuse of discretion only upon demonstration of "manifest unreasonableness, partiality, prejudice, bias, or ill-will." *Id.* We may not reverse, however, merely because the record would support a different result." *Id.* at 827.

We give great deference to trial courts that often have first-hand observations of the parties spanning multiple hearings. **In re T.S.M.**, 71 A.3d 251, 267 (Pa. 2013). The Orphans' Court is free to believe all, part, or none of the evidence presented and is likewise free to make all credibility determinations and resolve conflicts in the evidence. **In re M.G.**, 855 A.2d 68, 73-74 (Pa. Super. 2004). In addition, in order to affirm the termination of parental rights, this Court need only agree with any one subsection under Section 2511(a). **See In re B.L.W.** 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*).

The burden is upon the petitioner to prove by clear and convincing evidence that the asserted grounds for seeking the termination of parental rights are valid. **In re R.N.J.**, 985 A.2d 273, 276 (Pa. Super. 2009). We have explained that "[t]he standard of clear and convincing evidence is defined as testimony that is so clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." **Id.** (citations omitted).

**TERMINATION PURSUANT TO SECTION 2511(a)(2)**

Under Section 2511(a)(2), "the petitioner for involuntary termination must prove (1) repeated and continued incapacity, abuse, neglect or refusal; (2) [that] such incapacity, abuse, neglect or refusal caused the child to be without essential parental care, control or subsistence; and (3) [that] the causes of the incapacity, abuse, neglect or refusal cannot or will not be

remedied." *In re A.S.*, 11 A.3d 472, 479 (Pa. Super. 2010) (citation omitted).

This Court has defined "parental duties" in general as the obligation to affirmatively and consistently provide safety, security and stability for the child:

> There is no simple or easy definition of parental duties. Parental duty is best understood in relation to the needs of a child. A child needs love, protection, guidance, and support. These needs, physical and emotional, cannot be met by a merely passive interest in the development of the child. Thus, this Court has held that the parental obligation is a positive duty which requires affirmative performance. This affirmative duty … requires continuing interest in the child and a genuine effort to maintain communication and association with the child. Because a child needs more than a benefactor, parental duty requires that a parent exert himself to take and maintain a place of importance in the child's life.

*In re B., N.M.*, 856 A.2d 847. 855 (Pa. Super. 2004) (citations and paragraph breaks omitted). "Where the parent does not exercise reasonable firmness in declining to yield to obstacles, his parental rights may be forfeited." *A.S.*, 11 A.3d at 481 (citation omitted).

And most importantly, "parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with her physical and emotional needs." *In re B., N.M.*, 856 A.2d 847, 855 (Pa. Super. 2004) (citations omitted).

In the instant case, the trial court properly concluded that the Agency presented clear and convincing evidence to establish all three elements of Section 2511(a)(2).   It reasoned:

> Child has been in [the Agency's] care since he was three months old.  Father's remaining objectives in this case were to address the abuse of [E.H. and C.H.] and build his capacity to safely parent Child.  Father has always maintained that no child abuse occurred.   He waited for Mother to be released from prison following her guilty plea for child abuse, then had Child with her. Father has proudly maintained that he was a caregiver for [E.H. and C.H.], who were not related to him.  He was their caregiver when they were abused, but is unable to see how the case of [E.H. and C.H.] impacts his ability to safely parent [] Child. Father testified that Mother was tricked into confessing, and that no child abuse occurred.   While he has changed therapists in accord with the recommendations of the [parenting capacity evaluation], he has not provided any documentation from the ten months of treatment with his new therapist.   Father is unable to demonstrate that he is acknowledging the child abuse and his own role in caring for [E.H. and C.H.] Because Father is not able to acknowledge or prevent future child abuse, he does not present the capacity to parent.  Father visits Child five times a week, but Child would not suffer any irreparable harm if Father's rights were terminated.  For the life of this case, Father has denied that [E.H. and C.H.] were abused.   He maintained this denial when he testified at trial.  Child needs permanency, which Father cannot provide.   Father's consistent denial has demonstrated that he is unwilling to remedy the causes of his incapacity to parent in order to provide Child with essential parental care, control or subsistence necessary for his physical and mental well-being.  Termination under [Section 2511(a)(2)] was proper.

Trial Court Opinion, 12/21/16, at 4-5 (citations to notes of testimony omitted).

Father argues that the trial court erred in terminating his parental rights and changing the goal to adoption because he "had been present in

[Child's] life from birth." Father's Brief at 2. He further asserts that he has appropriate housing, and that he has "always been ready, willing and able to care for [Child]." According to Father:

> It is clear that this 18 month old child is bonded with [him], and that [he] can keep [Child] safe and meet all his needs. Despite the fact that a parenting capacity evaluation done in December of 2015 theorized that [Father] would not be able to keep [Child] safe because he did not believe that [Mother] had abused the older two children, in reality [he] had kept [Child] safe for over five months while in his care. This is and of itself, proved the theory of the parenting capacity evaluation wrong.

*Id.* at 3. Finally, Father refers to the caseworker's testimony that he would have left Child with him under Agency supervision but the caseworker's "chain of command did not agree." *Id.*

Our review of the record supports the trial court's conclusion that Father is incapable of parenting due to his consistent denial regarding the physical abuse suffered by E.H. and C.H. while they were in his care. It was for the trial court, as a matter of credibility, to determine the weight to be given the expert's testimony, as well as that of the caseworker and Father. *In re M.G.*, *supra*. Moreover, our review of the record reveals that, while the caseworker initially felt that Father could safely parent Child, his opinion changed once he read the parenting capacity evaluation. *See* N.T., 6/24/16, at 49. Therefore, the record supports that trial court's conclusion that the Agency has proven by clear and convincing evidence that termination of Father's parental rights to Child is justified pursuant to Section 2511(a)(2) of

the Adoption Act, and we need not consider the other bases for termination under this section. *See B.L.W.*, *supra*.

## TERMINATION PURSUANT TO SECTION 2511(b)

With respect to Section 2511(b), our analysis shifts focus from parental actions in fulfilling parental duties to the effect that terminating the parental bond will have on the child. Section 2511(b) "focuses on whether termination of parental rights would best serve the developmental, physical, and emotional needs and welfare of the child." *In re: Adoption of J.M.*, 991 A.2d 321, 324 (Pa. Super. 2010).

In *In re C.M.S.*, 884 A.2d 1284, 1287 (Pa. Super. 2005), this Court found that "intangibles such as love, comfort, security, and stability are involved in the inquiry into the needs and welfare of the child." In addition, the orphans' court must also discern the nature and status of the parent-child bond, with utmost attention to the effect on the child of permanently severing that bond. *Id.*

In cases where there is no evidence of a bond between a parent and a child, it is reasonable to infer that no bond exists. *In re K.Z.S.*, 946 A.2d 753, 762-63 (Pa. Super. 2008). Thus, the extent of the bond-effect analysis necessarily depends on the circumstances of the particular case. *Id.* at 763. Moreover:

> We have emphasized that while a parent's emotional bond with his or her child is major aspect of the subsection 2511(b) best-interest analysis, it is nonetheless only one of many factors to be considered by the trial court when determining what is in the best interest of the child. The mere existence of an emotional

bond does not preclude the termination of parental rights. Rather, the trial court must examine the status of the bond to determine whether its determination would destroy an existing, necessary, and beneficial relationship.

*In re A.D.*, 93 A.3d 888, 897-98 (Pa. Super. 2014) (citations and quotation marks omitted). Finally, "[i]n addition to a bond examination, the court may equally emphasize the **safety** needs of the child under subsection (b), particularly in cases involving physical or sexual abuse, severe child neglect or abandonment, or children with special needs." *Id.* at 898 (quoting *In re A.S.*, 11 A.3d 473, 483 (Pa. Super. 2010)).

In the instant case, the trial court determined that the evidence presented at the TPR hearing established that termination of Father's parental rights would not irreparably harm Child. It reasoned:

> Father has visited Child consistently over the life of this case. Child has a relationship with Father, but [he] rarely visits Child separately from Mother. Child would not suffer any irreparable harm if Father's rights were terminated, since Child is so young. It is in Child's best interests to terminate Father's parental rights so [Child] may be adopted. Although Child has a relationship with Father, termination of Father's rights would not destroy a necessary and beneficial relationship since Father is not able to safely parent Child. Child is less than two years old, and has been in [Agency] custody for sixteen months, the vast majority of his life. Any remaining bond with Father is attenuated. [The Agency's] witnesses were unwavering and credible. Consequently, the court did not abuse its discretion when it found that it was clearly and convincingly established that termination of Father's parental rights would not destroy an existing beneficial relationship.

Trial Court Opinion, 12/21/16, at 8.

Father cites to his own testimony and that from the social worker to assert that he enjoys a strong bond with Child and, although a caseworker

- 10 -

testified that no irreparable harm would be caused to Child given his young age, "common sense tells us otherwise." Father's Brief at 9. According to Father, termination of his parental rights "could not be in the best interest of [Child] as it would terminate the only source of love, comfort, security and stability that [Child] has ever known." Father's Brief at 10.

Once again, as a matter of credibility, the trial court did not find Father's testimony persuasive. Indeed, as noted above, the trial court expressly credited the testimony presented by the Agency. We cannot disturb these determinations. *See In re M.G.*, *supra*. Moreover, the Agency presented evidence that Child is safe in kinship care where all of his needs are met. *See* N.T., 6/24/16 at 60. Thus, we conclude that the trial court did not abuse its discretion in concluding that the Agency presented clear and convincing evidence that termination of Father's parental rights is in the best interests of Child.

**GOAL CHANGE**

Finally, given the above, we conclude that the trial court did not err in changing the children's permanency goal to adoption. *See R.J.T.*, 9 A.3d at 1183-84 (noting that when considering a goal change motion the court looks to the best interests of the child rather than those of the child's parents; the Agency must establish that its requested goal change option is best suited to the child's safety, protection, and physical, mental, and emotional welfare). As noted by the trial court, "Child cannot wait any longer for Father to place himself in a position to parent safely," and instead "needs permanency in a

home that would provide him safety and security for his physical and emotional well-being." Trial Court Opinion, 12/21/16, at 9.

**CONCLUSION**

In sum, our review of the record supports the trial court's conclusion that the Agency met its statutory burden of proving by clear and convincing evidence that Father's parental rights should be terminated pursuant to 23 Pa.C.S. §§ 2511(a)(2) and 2511(b).

Decree affirmed.

Judge Dubow did not participate in the consideration or decision of this appeal.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/30/2017